## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2015, 6:51 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Elmer Bryant,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 6, 2015

Court of Appeals Case No.
71A03-1411-CR-415

Appeal from the St. Joseph Superior Court

The Honorable Elizabeth C. Hurley, Judge

Case No. 71D08-1401-FD-6

**Brown, Judge.**

[1] Elmer Bryant appeals his convictions for auto theft and theft as class D felonies. Bryant raises one issue, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm Bryant's convictions but remand with instructions that the trial court attach his habitual offender enhancement to the sentence imposed on his conviction for auto theft as a class D felony.

## Facts and Procedural History

[2] On December 9, 2013, Bryant went to a Goodwill Industries location in St. Joseph County, entered the store, wandered all over, asked an employee for money for diapers, and then exited the store. Bryant walked to the parking lot of the Goodwill, walked to the driver's side of the vehicle of Terri Burks, an employee who worked in the administrative offices of Goodwill, and remained in the area around Burks's vehicle for a period of time.[1] Burks later exited the store, entered the driver's side of her vehicle, and discovered that the interior of the vehicle was in disarray and that money was missing. Burks also noticed that the power locks of the vehicle were not functioning properly. Two Disney

---

[1] A video recording of security camera footage admitted into evidence shows Bryant walked between two vehicles in the Goodwill parking lot, but due to Bryant's location and the location of the camera, it is not possible to observe his actions while between the vehicles.

The State argues that the time stamp on the Goodwill security video shows that Bryant was near the driver's side of Burks's vehicle for approximately three minutes, that a notation on the video shows the recording system only captures four frames per second, and thus that, while the time stamp for the exhibit DVD shows only a forty-second span between when Bryant approached Burks's vehicle and when he returned to his vehicle, the time stamp appearing on the video itself demonstrates that Bryant was near the driver's side of Burks's vehicle for approximately three minutes. The time stamp on the video screen when Bryant walked between the two vehicles is approximately 14:26:21, the time stamp when he walked out from between the vehicles is about 14:27:06.

World access cards, a postcard addressed to Burks's mother, a coupon addressed to Burks, and a photograph of Burks's son were missing from Burks's vehicle. Burks went back inside the Goodwill store and had security videos pulled that covered the parking lot so that she could see who entered her car. The video recordings showed Bryant enter the Goodwill store and wander all over, exit the store and walk to the driver's side of Burks's vehicle, and then walk to another vehicle and drive away.

At around 7:00 a.m. on December 20, 2013, Aubrie Washington discovered that her Toyota Camry was not parked in her driveway. Washington had not lost her keys and had not given anyone permission to take her vehicle, and she called the police.

On January 2, 2014, South Bend Police Officer Theodore Robert received a report that there were possible stolen vehicles located at an address on South Bendix Drive, and he traveled to that location and observed vehicles, including Washington's Toyota Camry, in the backyard of the residence. Officer Robert and other officers spoke with Bryant's sister, who indicated that she and Bryant lived at the residence. She led the officers to the basement area where Bryant was sleeping, and the officers woke Bryant up and discovered a number of items in the basement, including numerous keys to vehicles, credit cards, and the Disney World access cards, photograph, and mail addressed to Burks which were missing from Burks's vehicle. Bryant indicated to Officer Robert that the basement was his primary living area.

[5] Detective James Robert Cauffman interviewed Bryant at the police station, and Bryant stated that his address was the one on Bendix Drive where he was discovered sleeping; that his sister's boyfriend Anthony moved in, started bringing stuff there, and was arrested; that he had told Anthony that he needed to move the cars and Anthony said he would; that he had driven the cars; and, when asked if Anthony had told him the cars were stolen, Bryant stated no but that he figured they were stolen. Bryant's fingerprint was discovered on the inside glass of the driver's side rear door of the Camry.

[6] The State, in an amended charging information, charged Bryant with auto theft as a class D felony and three counts of theft as class D felonies, and the State also alleged that he was an habitual offender. At Bryant's trial, the State presented the testimony of, among others, Burks, Omeria Sibanda, a caseworker at Goodwill, Washington, Officer Robert, and Detective Cauffman, a video and audio recording of Detective Cauffman's interview of Bryant, video recordings of security camera footage obtained from the Goodwill store, and a number of photographs of the residence and basement area where Bryant was found sleeping. Sibanda testified that she recognized Bryant both in the courtroom and as a client, that Burks had asked her to review the security video from December 9, 2013 and she did so, that she recognized Bryant in the video, and that Bryant had asked for money for diapers while in the store that day. Detective Cauffman testified that Anthony Henderson was arrested earlier on January 2, 2014 for driving a stolen vehicle and that he had provided the South Bendix Drive address. The jury found Bryant guilty of auto theft and one count

of theft and not guilty on two of the theft charges. Bryant stipulated to the habitual offender enhancement. The court sentenced him to two years for his auto theft conviction, two years for his theft conviction, and two and one-half years for being an habitual offender, and ordered that he serve the sentences consecutively.

## *Discussion*

[7] The issue is whether the evidence is sufficient to sustain Bryant's convictions. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

[8] At the time of the offenses, Ind. Code § 35-43-4-2 provided in part that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony," and Ind. Code § 35-43-4-2.5 provided in part that "[a] person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of . . . the vehicle's value or use . . . commits auto theft, a Class D felony."

[9] Bryant argues that the State failed to demonstrate anything other than his mere presence at the scene, that there were two other adults associated with the Bendix Street address, Bryant's sister and Henderson, and that Henderson had been identified by Bryant as the individual responsible for the stolen vehicles and was also apprehended by police driving a stolen vehicle. Bryant also argues that, while the evidence placed him at the scene of Burks's vehicle, it did not demonstrate that he actually entered her vehicle.

[10] The State argues that the evidence exhibited more than Bryant's mere possession of the stolen Camry, that the vehicle was parked in the backyard of a residence he claimed as his domicile, he admitted to driving the vehicles on the property and figured they were stolen, he had told Henderson to take the vehicles off the property, and his fingerprint was found on an interior window surface of the Camry. The State also argues that Burks's Disney cards were found in the basement where Bryant slept, that a Goodwill employee identified him, that a video recording shows him near Burks's vehicle, and that, while Bryant's exact movements are unclear because the camera view is obstructed, after he was hovering around the vehicle, Burks was missing cash and other items from her vehicle and the locks to her vehicle were no longer functioning properly.

[11] Elements of offenses and identity may be established entirely by circumstantial evidence and the logical inferences drawn therefrom. *Bustamante v. State*, 557 N.E.2d 1313, 1317 (Ind. 1990). Identification testimony need not necessarily be unequivocal to sustain a conviction. *Heeter v. State*, 661 N.E.2d 612, 616

(Ind. Ct. App. 1996).  As with other sufficiency matters, we will not weigh the evidence or resolve questions of credibility when determining whether the identification evidence is sufficient to sustain a conviction.  *Id.*  Rather, we examine the evidence and the reasonable inferences therefrom that support the verdict.  *Id.*

[12]  "While the mere unexplained possession of recently stolen property standing alone does not automatically support a conviction for theft, such possession is to be considered along with the other evidence in a case, such as how recent or distant in time was the possession from the moment the item was stolen, and what are the circumstances of the possession (say, possessing right next door as opposed to many miles away)."  *Holloway v. State*, 983 N.E.2d 1175, 1179 (Ind. Ct. App. 2013) (internal quotation marks omitted) (citing *Donovan v. State*, 937 N.E.2d 1223, 1226 (Ind. Ct. App. 2010) (citing *Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010)), *trans. denied*).  The fact of possession and all the surrounding evidence about the possession must be assessed to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.  *Id.*; *see also Girdler v. State*, 932 N.E.2d 769, 773 (Ind. Ct. App. 2010) (noting that possession of recently stolen property is to be considered along with the other evidence in a case and the circumstances of the possession).  The trier of fact must assess all of the evidence instead of focusing upon one piece of evidence, such as possession of recently stolen property.  *Id.* (citing *Donovan*, 937 N.E.2d at 1226).

[13] Further, it is well settled that a defendant may be charged with and convicted of auto theft, even if the person was not the original thief, so long as the elements of auto theft are met—the knowing or intentional exercise of control over another's vehicle, with intent to deprive the owner of the vehicle's value or use. *Girdler*, 932 N.E.2d at 771; *see also Donovan*, 937 N.E.2d at 1226 (concluding the State was not required to show that the defendant had exclusive possession of the vehicle from the time of the theft to the time of his arrest but rather the trier of fact should look at all of the evidence to determine if the defendant is guilty of the offense beyond a reasonable doubt).

[14] The jury heard testimony from Burks, Washington, Officer Robert, and Detective Cauffman, and a video and audio recording of Detective Cauffman's interview of Bryant and video recordings of security camera footage from the Goodwill store and parking lot were displayed to the jury. The jury was able to assess the testimony and evidence in light of the statements of Bryant during his interview with Detective Cauffman.

[15] With respect to Bryant's auto theft conviction, the evidence most favorable to the conviction reveals that Washington's Toyota Camry was discovered in the backyard of the residence where Bryant lived. Bryant stated during his interview with Detective Cauffman that he figured the cars on the property were stolen and that he had told his sister's boyfriend he needed to move the cars. Bryant also stated that he had driven the cars, and his fingerprint was found on the inside glass of the driver's side rear door of the Camry. The jury as fact-finder reasonably could have concluded that Bryant exerted

unauthorized control over the Camry with intent to deprive its owner of the vehicle's value or use.

[16] As to his theft conviction, Bryant does not dispute that two Disney World access cards belonging to Burks were discovered in the basement where he was sleeping. He lived at the residence with his sister, and he indicated to Officer Robert that the basement was his primary living area. The State presented security video recordings of the Goodwill parking lot which showed Bryant walk between the driver's side of Burks's vehicle and another vehicle, remain there for a period of time, and then walk to another vehicle and drive away. Later in the day, when Burks exited the store and went to her vehicle, she discovered the power locks were not functioning properly and that the interior of the vehicle was in disarray. Burks testified that the two Disney World access cards found in the basement where Bryant was sleeping were taken from her vehicle. A rational factfinder could have found that Bryant knowingly exerted unauthorized control over the property of Burks, with intent to deprive her of its value or use.

[17] Based upon the record, we conclude that the State presented evidence of a probative nature from which a jury could find beyond a reasonable doubt that Bryant committed the crimes of auto theft and theft as charged.

[18] While we affirm Bryant's convictions, we *sua sponte* observe that the trial court erroneously entered a separate two-year sentence for the habitual offender finding to be served consecutive to the sentences for auto theft and theft. An

habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence. *See* Ind. Code § 35-50-2-8 (2009) (subsequently amended by Pub. L. No. 158-2013, § 661 (eff. July 1, 2014); Pub. L. No. 168-2014, § 118 (eff. July 1, 2014)). Rather, an habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony. *Hendrix v. State*, 759 N.E.2d 1045, 1048 (Ind. 2001). The court's sentencing order stated that Bryant entered a guilty plea as to the habitual offender count, entered a sentence of two and one-half years on the habitual offender count, and ordered the sentence to be served consecutive to Bryant's other sentences. The abstract of judgment lists a separate sentence for the habitual offender count and does not attach the habitual offender enhancement to Bryant's sentence for either auto theft or theft. We remand with instructions that the trial court vacate the separate sentence on the habitual offender enhancement and attach the enhancement to Bryant's sentence for auto theft as a class D felony.

## Conclusion

[19] For the foregoing reasons, we affirm Bryant's convictions for theft and auto theft as class D felonies and remand for the trial court to attach the habitual offender enhancement to Bryant's sentence for auto theft as a class D felony.

[20] Affirmed and remanded.

Crone, J., and Pyle, J., concur.